IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL PASQUESI, and <br> SARAH PASQUESI, <br>       Plaintiffs, <br>   v. <br> PORTFOLIO RECOVERY ASSOCIATES, INC., <br>       Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT

### INTRODUCTION

1.　Plaintiffs Paul and Sarah Pasquesi bring this action to secure redress from the unlawful debt collection practices of Portfolio Recovery Associates, Inc. ("PRA") in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), the Electronic Funds Transfer Act ("EFTA"), the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Collection Agencies Act, and the Illinois Consumer Fraud Act (815 ILCS 505/2).

### JURISDICTION AND VENUE

2.　This Court has subject matter jurisdiction under 28 U.S.C. §§1331 (general federal question), 1337 (interstate commerce), 1367( supplemental), and .S.C. §1692 et seq. (FDCPA), §1693m ("EFTA") and 47 U.S.C. §227.

3.　Venue in this District is proper because defendants are subject to jurisdiction here.

### PARTIES

4.　Plaintiffs Paul and Sarah Pasquesi are husband and wife, who reside in Lake County, Illinois.

5.　Defendant PRA is a limited liability company with offices at 120

1

Corporate Blvd, Norfolk, VA 23502. It does or transacts business in Illinois.

6. Defendant PRA is engaged in the business of purchasing or claiming to purchase allegedly defaulted debts originally owed to others and incurred for personal, family or household purposes.

7. Defendant PRA pays an average of less than four cents on the dollar for the debts it purchases.

8. On information and belief, based on a report by the Federal Trade Commission, PRA purchases the debts "as is", and has limited right to obtain any documentation regarding the debts.

9. Defendant PRA then attempts to collect the allegedly purchased debts by endlessly harassing consumers and sometimes filing suits against them.

10. Defendant PRA has been the plaintiff in 1,000 collection lawsuits that have been filed in Cook County, Illinois between 9/8/11 and 1/25/12. PRA has been sued repeatedly for violations of the FDCPA and other consumer protection statutes.

11. Defendant PRA is a "debt collector" as defined in the FDCPA.

## FACTS

12. During the summer of 2012, PRA began calling plaintiff Paul Pasquesi in an attempt to collect an alleged debt owed to US Cellular. Although plaintiff once had a US Cellular account, he paid it off in 2003, ten years prior to the inception of the phone calls, before moving to Canada for school.

13. The number PRA was calling was Mr. Pasquesi's cell phone number, and Mr. Pasquesi did not furnish that number to PRA, nor did Mr. Pasquesi furnish that number to US Cellular, as he did not have that number at the time he had a US Cellular account.

14. On information and belief, based on the clicks and silence Mr. Pasquesi heard when answering the calls, the calls were placed using predictive dialers. The predictive dialers place calls without human intervention until a connection is made, in which case the dialers

attempt to connect the recipient with a debt collector.

15. There is nothing on Mr. Pasquesi's current credit reports indicating that he owes a debt to US Cellular, and there was also nothing on his 2011 credit reports regarding such a debt. PRA was aware of this fact because it checked his credit reports on at least one occasion, in August, 2012.

16. PRA did not send Mr. Pasquesi any written notices concerning the debt, or his right to dispute the debt pursuant to §1692g of the FDCPA.

17. Mr. Pasquesi informed PRA that he disputed any such debt, and requested that they send him documents establishing that he owed the debt. PRA refused to send any documents, using various excuses, including that they had sent something to a prior address, that "we're are not obligated to give you any additional information, that is US Cellular's responsibility," and, that "it's not our fault you don't get your mail." When Mr. Pasquesi told one of the PRA agents he was going to stop answering their calls, which were being made on a daily basis at some point, the PRA agent told him he was not permitted to do so.

18. On information and belief, the real reason PRA refused to send anything in writing about the alleged debt was because they did not want plaintiffs to know the alleged debt was time barred. Other consumers have complained of similar conduct by PRA on the internet.

19. On information and belief, based on the recent FTC report on debt buyers, PRA had no documents regarding the disputed debt, and limited ability to obtain any such documents from the original creditor.

20. At some point in late summer 2012, after Mr. Pasquesi stopped taking their calls, PRA began repeatedly calling Sarah Pasquesi, Paul Pasquesi's pregnant wife, about the disputed debt on her cell phone, despite the fact that it was not her debt, and the fact that the disputed debt predated her marriage to Mr. Pasquesi. Neither Mr. nor Mrs. Pasquesi ever provided PRA her cell phone number.

21. Mrs. Pasquesi repeatedly requested that PRA stop calling her at that number, and

especially during certain hours on that number, including January 28, 2013, because it was a cell phone that doubles as her work number. PRA's agents informed plaintiff that they would not stop calling her on that number because she could not "pick and chose" the times they could call her, and that she would have to give them another number to call at if she wanted them to stop.

22. Mrs. Pasquesi asked them to contact her husband, but they informed her they would keep calling her because they couldn't reach him. Plaintiff was unable to block PRA's calls because the number they called from continually changed, and she could therefore not tell if the call was coming from PRA or a work client.

23. Mrs. Pasquesi also repeatedly asked for documents concerning the alleged debt, and PRA again refused to provide them, claiming that she needed to agree to a settlement involving two electronic payments of approximately $88 each before they would send her any documents. The PRA agent informed plaintiff that if she agreed to the settlement, and then was not satisfied with the documents they sent, she could put a stop payment on the automatic withdrawals.

24. After enduring weeks of calls from PRA, and being awakened from a nap while she was experiencing morning sickness, Mrs. Pasquesi was bullied into agreeing to the proposed "settlement" in October, 2012. When Mr. Pasquesi learned of what had occurred, he contacted their bank, who advised them to close their bank account, because if PRA altered the payment amount by only a penny, as stop payment would not work.

25. The Pasquesis then went through the hassle and inconvenience of closing their bank account and opening a new account, in order to stop PRA from deducting any money.

26. The only document PRA sent following her agreement to the "settlement," was a document stating the PRA had acquired the account from United States Cellular Corporation on December 21, 2006. Exhibit A PRA did not send the documents they promised proving the existence of a debt.

27. On November 1, 2012, PRA attempted to deduct $88.16 from plaintiffs' bank

4

account using an ACH debit. PRA failed to obtain written authorization from plaintiffs prior to initiating the attempted ACH debit. Because the account had been closed, the debit did not actually go through.

28. When PRA's agents learned that the ACH debit was unsuccessful, they became irate, and called Mrs. Pasquesi on or about January 18, 2013 and accused her of breaking the law. They also claimed she would have to pay a some type of penalty as a result, that she had reset the statute of limitations and would have to pay the disputed debt, and that she was liable for the debt because she was married to Mr. Pasquesi and they had a joint bank account. Mrs. Pasquesi was so scared by the accusations that she contacted her State's Attorney's office and the FTC for assistance. Mrs. Pasquesi made complaints about PRA's conduct with the FTC, and with the Illinois Department of Financial and Professional Regulation.

29. Prior to the January 18, 2013 call, PRA had never informed plaintiffs that the alleged debt was time barred.

30. Plaintiffs have suffered actual damages. Sarah Pasquesi has also suffered emotional distress, while pregnant, and the Pasquesi's were forced to close their bank account to prevent PRA from taking their money.

## COUNT I – FDCPA CLAIM

31. Plaintiffs incorporate paragraphs 1-30.

32. PRA violated 15 U.S.C. §§1692(c),1692(d), 1692e, 1692e(7), 1692e(10), 1692f and §1692g by:

    a. Refusing to stop calling Mrs. Pasquesi on her cell/work phone.

    b. Continuing to call Mrs. Pasquesi at hours she had informed them were inconvenient for her.

    c. Continuing to call Mrs. Pasquesi when she requested that they stop calling her and call her husband instead.

    d. Repeatedly calling Mr. and Mrs. Pasquesi with the intent to annoy,

abuse or harass them about a disputed debt.

   e. Falsely informing Mrs. Pasquesi that she had violated the law when she closed the bank account to prevent PRA's ACH debits.

   f. Refusing to provide any documents to plaintiffs regarding the disputed debt, and falsely telling Mrs. Pasquesi that they would send the documents if she agreed to a payment plan.

   g. Communicating with Mrs. Pasquesi about Mr. Pasquesi's debt without his express permission.

   h. Refusing to cease collection on the debt after being informed that it was disputed, and failing to provide verification information regarding the disputed debt.

   i. Failing to inform plaintiffs that the debt they were attempting to collect was time barred.

   j. Failing to send a §1692g notice within the first five days after contacting Mr. Pasquesi.

   k. Falsely informing Mrs. Pasquesi that she was liable for the debt because she was married to Mr. Pasquesi and they had a joint bank account.

33. Plaintiffs were damaged as a result of defendant's conduct.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and defendant for:

  (1) Appropriate actual and statutory damages;

  (2) Attorney's fees, litigation expenses and costs of suit; and

  (3) Such other or further relief as the Court deems proper.

### COUNT II – ELECTRONIC FUNDS TRANSFER ACT

34. Plaintiffs incorporate paragraphs 1-30.

35. The authorization to debit plaintiffs' account is an electronic funds transfer under 15 U.S.C. §1693a(6), which defines electronic funds transfer as "any transfer of funds, other than

a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. . . ."

36. The authorization to debit plaintiff's account is also a "preauthorized electronic fund transfer" under 15 U.S.C. §1693a(9), which defines preauthorized electronic funds transfer as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

37. Under 15 U.S.C. §1693e, a preauthorized electronic fund transfer can only be authorized in writing and, if not in exactly the same amount each time, must be preceded by written notice to the consumer:

> **§ 1693e. Preauthorized transfers**
>
> **(a) A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.**
>
> **(b) In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Board, of the amount to be transferred and the scheduled date of the transfer.**

38. Defendant attempted to debit plaintiffs' account without signed written authorization.

39. Defendant thereby violated the EFTA.

40. 15 U.S.C. §1693m provides:

> **§ 1693m. Civil liability**
>
> **(a) Individual or class action for damages; amount of award. Except as otherwise provided by this section and section 910 [*15 USCS § 1693h*], any person who fails to comply with any provision of this *title [15 USCS §§ 1693* et seq.] with respect to any consumer, except for an error resolved in accordance with section 908 [*15 USCS § 1693f*], is liable to such consumer in an amount equal to the sum of–**

> **(1) any actual damage sustained by such consumer as a result of such failure;**
>
> **(2) (A) in the case of an individual action, an amount not less than $ 100 nor greater than $ 1,000; . . . . . . . .**
>
> **(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.**

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against defendant for:

(1)   Statutory damages;

(2)   Attorney's fees, litigation expenses and costs of suit; and

(3)   Such other and further relief as the Court deems proper.

### COUNT III – TELEPHONE CONSUMER PROTECTION ACT

41. Plaintiff incorporates paragraphs 1-30.

42. The TCPA, 47 U.S.C. §227, provides:

> **§ 227.  Restrictions on use of telephone equipment**
>
> **. . . (b) Restrictions on use of automated telephone equipment.**
>
> **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**
>
> > **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**
> >
> > > **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

43. The TCPA, 47 U.S.C. §227(b)(3), further provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A)  an action based on a violation of this subsection or the regulations**

8

> prescribed under this subsection to enjoin such violation,
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

44. Defendant violated the TCPA by placing automated calls to Mr. Pasquesi's cell phone.

45. PRA's actions were willful, as evidenced by the fact that, well before the calls were made to Mr. Pasquesi, multiple class action suits were filed against PRA for similar conduct in 2011, and on September 14, 2011 an injunction was entered restraining PRA from making automated calls to California area codes obtained through skip tracing.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against the defendant for:

    (1)    Statutory damages;

    (2)    An injunction against further violations;

    (3)    Costs of suit;

    (4)    Such other or further relief as the Court deems just and proper.

**COUNT IV – VIOATION OF THE ILLINOIS COLLECTION AGENCY ACT**

46. Plaintiffs incorporate paragraphs 1 - 30

47. A private right of action exists for violation of the ICAA, 225 ILCS 425/1 *et seq.*. *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

48. PRA, in the regular course of business, engages in debt collection and is a "collection agency" as defined by 225 ILCS 425/2.02.

49. PRA's conduct violated 225 ILCS 425/9(a)(15) in that PRA

communicated with Mr. and Mrs. Pasquesi at such a time of day or night and with such frequency as to constitute harassment of the plaintiffs.

50. PRA's conduct violated 225 ILCS 425/9(a)(15)(D) in that PRA caused a telephone to ring or engaged the plaintiffs in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass.

51. The Defendants' conduct violated 225 ILCS 425/9(a)(31) in that PRA engaged in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public

52. The foregoing acts and omissions of PRA constitute numerous and multiple violations of the Illinois Collections Agency Act, including every one of the above-cited provisions.

53. The plaintiffs are entitled to damages as a result of PRA's violations.

WHEREFORE, plaintiffs request that this Court enter judgment in their favor, and against defendant for:

    (1) Actual damages;

    (2) Punitive damages;

    (3) Costs, and such other and further relief as the Court deems proper.

## COUNT V -- ILLINOIS CONSUMER FRAUD ACT CLAIM

54. Plaintiff incorporates paragraphs 1-30.

55. PRA engaged in unfair and deceptive acts and practices, and violated Illinois public policy, 820 ILCS 305/8.2 and 815 ILCS 505/2, when it attempted to collect a time barred, disputed debt from plaintiffs by repeatedly harassing Mr. and Mrs. Pasquesi, and making the misrepresentations described above, including concealment of the fact that the disputed debt was time barred, until after they had bullied Mrs. Pasquesi into agreeing to a "settlement."

56. Plaintiffs have been injured as a result.

57. PRA engaged in such conduct in the course of trade and commerce.

WHEREFORE, the Court should enter judgment in plaintiffs' favor and against defendant for:

      (1)    Actual damages;

      (2)    Punitive damages;

      (3)    Attorney's fees, litigation expenses and costs of suit;

      (4)    Such other and further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                              /s/ Daniel A. Edelman
                                              Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)